Petitioner, Michael J. Keaton, Petitioner, Mr. Michael J. Keaton, on behalf of the Petitioner, Mr. S. Steven Kessler. Mr. Keaton, you may proceed. May it please the court, justices, counsel. My name is Michael John Keaton. I am the appellant as well as counsel for myself in this case. The issue before the court today, central issue before the court, is whether the trial court abused its discretion in setting a fee award in this case over 26 times the contractual liability set forth in the written agreement between the parties. Now, this isn't just a matter of double or triple or even five or ten times. This is 26 times the amount of liability that is the do not exceed amount in the written agreement between the parties. Now, if we were standing here, $2,500, just to kind of put it in perspective, $2,500 is only 3.8% of the $65,922.86 that the trial court ultimately awarded to counsel, my co-counsel in this case. One of the reasons for the, well, we don't need to get into that, but the 3.8%, if we were standing here and the tables were turned and the trial court had deducted 96% of my co-counsel's fees from their fee application, they would be the appellant here and I would be the appellee. Now, the trial court did all of this without any statement of reasoning whatsoever. What I find very interesting is... Oh, wait a minute. Was there a record? Was there a transcript of the hearing? No, there was not. I'm from the federal system. I've spent 28 years of my career practicing in the federal system. I was astonished at the kind of, there's no court reporters in any of these hearings. So I brought court reporters to every hearing. The only reason there's no court reporter at this one is because it was set at 9 o'clock. I was under the impression it was a contested proceeding, which always proceeds at 1.30. So I show up at 1.30, nobody's there, courtroom's locked. Court reporter, send her home, no record whatsoever. We go in on the motion to vacate, bring all of this to the trial court's attention, like, judge, you didn't even have a copy of the fee agreement. You didn't have any statement of hours. You didn't have any statement of the time expended. You don't even know which of the two attorneys before you actually did the tasks for which you're awarding 26 times the contractual liability here. So I understand their point of, you know, how do you know the trial court didn't read the fee agreement? Because he ultimately filed it for the first time. He didn't file it with the first interim fee award. He didn't file it with the second interim fee award. So he got $30,000 before the trial court ever had a chance to lay eyes on the written agreement between the parties. Well, the $30,000 award, how many times is that over? Is that, like, 15 or 14 times over? That's at least 10. So, you know, they say there's no math in law school. We only divide by three. It's got to be at least 12 or 13 times that over. Well, after the second fee, if you felt that you were being prejudiced, extremely prejudiced, why didn't you fire your co-counsel? Well, we talked about exactly that. One of the reasons we agreed, we're both counsels, one of the reasons we agreed to this, he proposed it and I agreed to it, was to go in on these interim awards. Don't tell the trial court anything. Go in on these interim awards as a way to block opposing counsel, the, I don't know how you would say it, the ex-wife's lawyer, okay, to block her from filing a fee petition, a formal fee petition. Because he said, once she files a formal fee petition, then I'll have to file a formal fee petition, and then we'll get bogged down in a bunch of money going to her and a bunch of money going to me. It's much better if you just do these as interim awards agreed and that nobody's the wiser, and we don't have to disclose anything, including our $2,500 cap on fees, the fact that I was going to do all the work and just ask him to consult. Well, does that then mean that he was going to refund the money according to your agreement? I believe so. At that time, I believe so, because it was all, like, this doesn't mean anything. We're ultimately going to settle up between ourselves because we're personal friends. Is that in the record, what you just related? No, that's actually beyond all that. Well, the only reason I brought it up is because the $30,000 were interim fee awards before the court ever saw that. Those interim fee awards, then, once you have a hearing, and nobody's suggesting that the trial court didn't have subject matter jurisdictions to hold a hearing. They can hold a hearing. It can't be a final hearing and incorporate the two interim awards prior to that and then enter a judgment for a set dollar amount in violation of the statute. You have a statutory direction that says no final hearing is permitted unless, and we all agree that the unless never happened. The fee agreement was never submitted with the fee application itself. Did you ever file a motion to strike the petition? The petition? No, I filed the motion for reconsideration because the first time the fee petition. Right, but you knew a fee petition was pending, and you knew it did not have the requisite documents attached, correct? Yes. Did you ever file a motion to strike that petition, alleging? No, I don't believe, I know I never did. I don't think he ever did. Why would he file a motion to strike his own petition? Well, at that time, we were kind of diverging because when he asked for that amount, I was like, what are you doing? And it became this, you know, you get pushed to the deep end all at once. We kind of waded our way in. First, there was $10,000. I was like, okay, if you say this is all going to be sorted out at the end, fine. And then it got to be a $20,000 when I pulled from the account, basically. Again, I was increasingly alarmed at that point, but not to the point where I was about to, like, ruin a personal friendship over this because I was always being assured that it was going to be resolved and sorted out. This was strictly a defensive move as against opposing counsel. I was like, fine. So we're still on the same page. But once he filed another fee application for this, I think the final one was about $34,000. I was like, this doesn't sound like what we agreed to at all, and you still didn't follow the statute. And then you went to the hearing, and you told the judge you followed the statute when you admitted in your reply that you didn't follow the statute. So which is it, counsel? What was missing? The fee agreement. Wasn't that tendered at the time of the hearing, the hearing that you were not present at? No. It was either tendered there or it was tendered in his reply. But the statute requires that it be attached to the fee petition itself. But again, you never asked to strike that. Correct. And it was tendered prior to the hearing. I believe it was tendered to the hearing because he attached it to his reply, as I recall. So in the reply, it has the do not exceed price. Now, the interesting part about that is their argument is, well, how do you know the trial court didn't read the agreement? Well, you've only got two options. Like your Honor, I'm sorry, your Justice said earlier, you've only got two options here. You've got he read the agreement and just refused to follow it, or he didn't read the agreement. I think it's more, in my personal opinion, I think it's more accommodating to the trial judge, trial court, to say that he didn't read the agreement. Because if he didn't read the agreement, you know, that's an abusive discretion. But if he did read the agreement and he still awarded 26 times the amount of the contractual liability without any statement as to why, reasonings, anything. You don't know what the trial court said or didn't say at the conclusion of the evidence. Correct. And my point is, either way he went, he either read it or he didn't read it. Either way he went, that's an abusive discretion. You've got Fletcher, I believe it's, yes, Maguson, Fletcher, Engiuli, and Maxson, all saying a fee award cannot be based on any amount in excess of the contractual liability between the parties. So if the judge, if the trial court read that agreement and still awarded 26 times the $2,500 do not exceed price, then that's an abusive discretion. And if he didn't read it, that's an abusive discretion. You're citing a lot of things that aren't in the record. What is in the record as far as how that maximum amount was exceeded multiple times, which you've referred to? It was exceeded multiple times based on some assumption that you had. What is in the record pertaining to that? What's in the record is now there's a fee agreement that says do not exceed, the fees between the party, the counsel and client, meaning, shall not exceed $2,500 unless agreed to in a subsequent record. Is the fact that you voluntarily, as you just told us a little while ago, voluntarily exceeded to that and went along with a temporary fee payment, is any of that in the record? What's in the record, again, is the $2,500 contractual limit and then the order from the trial court saying, awarding a judgment for $65,000, $66,000. So what you've argued to us today, you did not argue to the appellate court. I'm sorry, to the trial court. Oh, sure I did. The fact that you had paid over that amount to your attorney on several occasions, is that in the record at the trial court? Yeah, well, they're saying it's in the record. I would tend to agree with that because even though we had, there was a revolving door here, we had about four or five different judges on this case. I don't know which of the judges entered the $10,000 pool, but it was all by agreement. There was no hearing, there was no record of any kind. So even the court reporter could not have picked that up. That was all just like agreed between opposing counsel and my co-counsel. So that would only be reflected then in a court order, is that right? The court order. An agreed order to that effect. An agreed order for a $10,000 pool, an agreed order for a $20,000 pool, interim pool, and then the final award, which kind of blesses the interims and then enters a judgment for a set dollar amount, that's the one where I came in and said, whoa, whoa, whoa, whoa, whoa, whoa. This is not at all in compliance with our agreement. And that's the one that there's no record for. Right. There's no court reporter there because it went at 9 o'clock instead of 1.30. Right. Did you attempt to formulate a bystander's report? No, I did not. Again, being from the federal system, I had no idea about the bystander's report. I had an order awarding $65,000 or $66,000, and I had an agreement that the judge either read or didn't read that's in the record with a cap of do not exceed $2,500. Now, the interim orders that were entered by agreement, what effect did they have on your position here today? Is there any kind of waiver or forfeiture by virtue of you agreeing on an interim basis to a fee award in excess of what you're saying the agreement allowed? I don't think so. I don't think one, they're interim, and two, as your justice stated earlier, waiver is basically knowing relinquishment to a known right. It's like at that time, it was just a, this is just a marker, don't worry about it, this doesn't mean anything. Again, that's not part of the record everywhere. Right, that part is not. So all we have is the fee agreement for $2,500, do not exceed. And twice you agreed to fees substantially greater than what you now claim is the maximum liability. Well, keep in mind, we were co-counsel. But that's in the record. I understand, but keep in mind, we were co-counsel. So I was expecting to get a fee application on file as well. Even if that's so, let's just assume you had a 50-50 split. It's still $5,000 and $10,000 is substantially greater than the $2,500 that you're saying was the maximum of your liability. I agree with that. Why couldn't the trial court have considered, that's what the document says, but here I had two agreed orders where fees are substantially greater than that, and I have not had a single motion or petition to amend that, to change that, or to say, hey, that's in excess of what I agreed to. I agree with that, yes. I agree with that. Isn't that inconsistent then with your position today? No, I don't think so.  But the fact of the matter is, the only thing that's in the record is a contract for $2,500 did not exceed and an award 26 times that. And two interim agreed orders. And two interim agreed orders that we don't know how that money was going to be divided or split or anything. There was no evidence of that to the trial court at all. Right, so the trial court has to look at it on its face. You have agreed to pay $10,000. You have agreed to pay $20,000. Go ahead, I'm sorry. And is there anything on there that indicates that part of that money was to go back to you or that counsel was only to get half of $2,500 at that point? I don't know. Do I have permission to answer? Yes, sir. It depends on which one you want to relate to, your buzzer or his. I'm just happy they went off at the same time. I don't know the answer to that because there is no record of anything. There's no record of what one judge did versus another judge did. But it's your burden to produce a record upon which we can review your claims of error. But how do I do that when there is no record? There is nothing. They don't keep track of anything down there. That's the beauty of it. I know. I mean, it just defies every reason. It's like, I get it, there's an abuse of discretion standard, but if you don't state your reasons, how are you going to, like, allow the appellate court to review it? What I noticed in the interest of... The rules put the obligation on you to create a record. If there is no court reporter, you can bring one. If you don't bring one, you have the obligation or the opportunity, depending on how you look at it, to create a bystander's record. Well, one thing I would just ask you to ask them is, where is your proof of unconscionability or contractual impropriety? There was no proof of that at the trial court level. Again, we don't know that. Right. But it's their burden to show that burden. It's your burden to create a record. That's what I keep trying to say. How do I know what was presented to the trial court or what the trial court relied upon? I don't know that either. What I do know is that the order from the trial court stated that it found that 508C had been complied with, yet in his own reply, he admitted he didn't follow 508C. So how can you tell the trial court something that you just, like, diametrically opposed your statement, was diametrically opposed to that just four days prior to the hearing? So I thank the court for its time. You will have an opportunity to make rebuttal. Okay. Thank you, Your Honor. Mr. Rakowski. Thank you. Good morning, Justices. Good morning. I truly appreciate the opportunity to be before you today to share my thoughts and my interpretations of the law in this case. If it pleases the Court, I'm going to try and be very brief. I hope that Appelli's brief in this case, filed on behalf of my firm, which was the judgment awardee, is sufficiently clear about the facts in this case and about the law. I'm only going to address the facts to the extent that the Court addressed them with the appellant. First of all, with regard to the assertion that there seems to be some contradiction in the record that 508C was followed. The record was presented in this case, such as it is, by the appellant. The record did include, at A26 to A34, my reply, which appellant correctly states acknowledges an oversight, an administrative oversight, in that the engagement agreement referenced in the petition for fees as Exhibit A wasn't attached. It was an administrative error. Was it referenced in the petition as Exhibit A, but it wasn't attached? Yes, Your Honor. Yes, Justice, absolutely. The reply to the appellant's objection to the fee petition referenced that fact, that I acknowledged it at a prior status hearing on the motion, on the petition, and attaches it. So the record at A26 to A34 affords this Court confirmation of appellee's assertion that the engagement agreement was a matter of record before the trial court in October of 2017. The fee award was not entered until December of 2017. Nowhere in appellant's brief does he acknowledge that. In fact, in two different places in appellant's brief, he tries to convince this Court that the engagement agreement was never before the trial, in fact, which is patently incorrect and contradicted by the record appellant did submit in this case. Secondarily, Justice Spence, I think, put his finger right on an important part of this case when he asked the appellant, wasn't an agreed order entered allowing interim fees and acknowledgment of modification of the underlying engagement agreement? And I would posit that not only is that proof of an ongoing consent by the appellant to continual amendment of the engagement agreement, but I would also suggest that it is proof that since he kept my firm in the case from then until very shortly before the case was resolved, he continually consented to the amendment of the engagement agreement. One of the facts that neither appellant nor appellee raised in either brief was that the trial judge in this case, the judge that heard pretrial motions, the judge who sat in three days of pretrial with the parties in council, is the same judge who heard the fee petition. That judge saw the involvement acknowledged by the appellant. That judge heard argument, saw documents produced by my firm, saw all of the efforts undertaken. There's an important third fact I want to raise to the court. There's a question also raised by the court about whether there was any motion filed to reconsider or to vacate the interim fee awards. Why did the appellant in this case allow the fee awards? Appellant is correct when he recited to the court that the orders entered regarding those interim fee awards were without prejudice and subject to reallocation. However, as I previously stated to the court, my representation of the appellant ended pursuant to court order granting me leave to withdraw prior to the resolution of this case. The resolution occurred by a written agreement of the appellant and his then wife. The written agreement required each party to pay their own attorney's fees. Nowhere in that agreement did it reserve the issue of prior fee awards for reallocation, for argument, or anything. The matter of interim fees was resolved by the appellant's own agreement in this case as he was representing himself at the approval of their written agreement. Having presented those facts, I would like to briefly transition to the law in this case. I submitted in my brief that Mr. Keaton's argument with regard to the statutory requirement somehow divested the trial court of jurisdiction to hear this case, to hear the fee petition. I posit for the authorities, based on the authorities cited in my petition, specifically the DiGiovanni case, that the trial court is imbued with jurisdiction to hear all justiciable matters by the Constitution and not by the statute, and that this is a justiciable matter as determined in the Harrison case. So I would suggest that, by those authorities, the legislature does not have the authority to restrict the jurisdiction of the trial court, in this case, to hear that justiciable matter. Secondarily, and along that vein, the next point that Mr. Keaton, in his brief, tries to convince this venerable body of is that somehow there has become a statutory construction issue that is a fallacious argument based on the appellant's sole conclusion. I suggest that because the statute itself specifically reserves, to the trier effect, in his sole discretion, the ability to resolve these fee disputes. So the statute itself, 508C3, specifically reserves the resolution of these disputes to the trial court's sole discretion. I would suggest this case is about abuse of discretion and not the noble review of a question of statutory interpretation. Finally, with regard to the first argument about whether or not the court had authority to hear this case, I would suggest to the court that one of the authorities cited by Mr. Keaton in his brief is that if the court does deem that this is a matter of statutory construction, it then must give the statute its ordinary and plain meaning. And I suggest that if the court were to do that, conceding the argument for purposes of argument, not doing so, but for purposes of argument, to show the absurdity of the appellant's argument, I would suggest that it would require this court to ignore language in the statute, not the least of which is that a hearing shall be had if the following things are, the enumerated elements are satisfied. And one of the enumerated elements is the submission, the filing, with the petition. That's the language, the strict language in the statute. Filing with the petition. He's asking this court to interpret that language to only mean it has to be attached to the petition. It cannot be later submitted. And my argument to this court is that that is a draconian interpretation invented by the appellant for the sole purpose of trying to bootstrap or shoehorn his way into a statutory construction argument. If the court was to accept that interpretation, it would necessarily mean one of two things. Either that if a fee, an engagement agreement is not attached to the fee petition, at the time the fee petition is filed, the petitioner loses an ability to proceed on that petition. Or that it necessitates an administrative act of dismissing the petition and directing the petitioner to refile. As Justice Jorgensen acknowledged or asked in this case, there was no such motion filed in this case. And to allow the appellant to raise that argument now on appeal when he didn't do it, in any of his pleadings, when he didn't do it in any of his arguments, is, I believe, inappropriate. Lastly, there has been a lot of discussion, Your Honors, on the issue of who has the burden of establishing to this venerable body what the facts of this case were. I submitted in my brief authorities to suggest, as the court has already indicated by the nature of its questions to the appellant, that if the appellant wants this court to believe a certain set of facts are true, it must establish those facts to this court in its record. And there was questions about why wasn't a bystander's report provided here. And I think it's an excellent question. And I would suggest that because if the bystander's report were provided by the trial judge who ruled on a fee petition, the bystander's report would have been very unfavorable to the appellant in this case. Appellant essentially argued that the reason why a bystander's report was not presented is he didn't know he had to do it. I'm sorry. This counsel is not ignorant of the rules required under the Supreme Court or the Code of Civil Procedure. He entered his appearance in this divorce case as his own co-counsel, and he is charged with the responsibility of knowing the laws of the state. My authority cited at faux further sense, besides the fact that the burden is on the appellant to create the record, that if there is no record, if there's no contrary indication that Judge Collins saw the engagement agreement, considered the engagement agreement, considered all the actions of Mr. Keeton and me on behalf of my firm in the history of this case, if the trial court saw all those actions, that somehow this court, Mr. Keeton argues, this court should presume that the trial court had inadequate evidence to mentor its award. I think the question was made by Justice McClaren. Did the, does he believe that the action taken by the trial court in this case, forgive me, I've got to get to my notes, was improper? Should this court presume that it's improper? And Mr. Keeton answered the court's question in the affirmative. Yes, this court should assume that it was improper. In fact, faux says, unless there is contrary indication in order or in record, it is presumed that the trial court heard adequate evidence to support decision that was run. So Mr. Keeton first asks this court to forget about the requirement that he knows the rules of law and how to create a proper record in this case. He then posits the unsupportable conclusion that this court should assume the trial court's action without contrary indication in the record is inappropriate. And finally, he tries on numerous occasions to suggest that my intent in this case is somehow insidious because I'm being awarded 26.5 times the amount of fees contemplated or originally authorized in the engagement agreement. And I suggest, Honorable Justices, that that's for the purpose of trying to make my firm look bad and has no bearing on this case whatsoever. My final point on this, Justices, is that my firm stated in this case, let me complete this last sentence, For two years, two years, hundreds of e-mails, dozens of court appearances, as I argued, multiple pleadings, and at least three days in pretrial with the petitioner, with the respondent, then respondent, appellant in this case, at my side, in all instances requesting my services, 508 also allows the trial court to do what is fair, to award, in essence, quantum merit. Even if this court was to decide that somehow it's not the appellant's burden to create an adequate record and somehow this court should conclude or assume that the trial court's actions were improper, that he did not authorize the work taken. The fee award was based on the trial court's personal experience and observation of what preceded the filing of the petition and the services my firm rendered to the appellant in this case. Thank you, Your Honor. I have an additional question. Yes. I mean, I am troubled by the fact that there was a written agreement that maxed out at $2,500. And how do we have that on one hand and then these two interim agreements, three folders for interim fees, that's far in excess of the $2,500? So if I understand the Justice's question, how, if the interim agreement is in the record and it clearly says $2,500. $2,500, and if you're going to change it, it's got to be in writing. Is that agreed order, the written agreement to modify? So I would argue that it is part of the agreement to modify. The other agreements to modify are the continuous e-mails between Mr. Keaton and my firm saying, please take on this action. Are they in record? No. Well, then how? So they were, I'm sorry, in record in this case? Yes. Okay. So the answer is? Or before the trial court. They were presented to the trial judge at the time of the hearing, along with the voluminous invoices issued by my firm to Mr. Keaton. I can tell the court that I don't believe the trial judge reviewed all of what I tendered. To answer Justice Jorgensen's question, Judge, my position with regard to that question is yes, they were presented to the trial court. However, I'm suggesting respectfully that that issue is beyond the purview of this court's consideration. Because this court has to assume that Judge Collins' action was appropriate because there's no indication in the record to the contrary. Let me ask you just to go ahead. I was just going to say, we can look at that agreement that you attached to your petition and say, oh, that is some indication in the record that there was an abuse of discretion. And so I'm asking you, how do I reconcile that? I mean, I'm very familiar with FOUCH. I know what it means, what it says. But one of the things that FOUCH allows for is, but there's something in the record that would indicate the court didn't. Follow the appropriate considerations. And that's what I'm picking at. And my question is, how do you reconcile that? How should I reconcile that? Okay. Great question. And I would suggest two answers. First, and they're consistent answers. Okay. First, there was an agreed order entered allowing interim fees. Right. I recall that. And related to that is the fact that Mr. Keaton settled this case on his own power, on his own two feet, agreeing that there would be an assumption of all fee responsibilities by the respective parties. There was going to be no reallocation, which means he approved the award of those fees to my firm. As part of that agreement, as I previously suggested, there was no reservation of that issue in the record. It was final. And it became final. Wait a minute. You're saying the final decree was entered and then the petition on fees? Your petition on fees? Or your petition was? My petition was filed within 30 days following the leave I was granted to withdraw. Okay. And that was before the final disposition. I believe that's correct, although I'm not sure. Okay. But your petition for fees is pending before the final disposition of the dissolution case. Yes. All right. So you're relying on the agreed order, the final disposition, and these e-mails and invoices, which you purport indicate him continuously asking for you to continue in the case, even after there has been an agreement for $10,000 and $20,000 of fees. Yes, Your Honor. Is that the gist of it? That's the first answer. The second answer is that during the case, when I was co-counsel to Mr. Keaton and his interests, there was significant interplay between the court, Mr. Keaton and I, with regard to who is going to argue what issues, who is going to file what briefs. The trial court was specifically aware by those interactions that Mr. Keaton was subsequently authorizing and directing my participation and services. And I believe that was a second basis for the court's award. Just a quick question about the fee hearing, the hearing on your petition for fees. You indicated a few minutes ago that the trial court considered e-mails and invoices you had sent. Is that right? Yes, Your Honor. Okay. Is there anything, the only record, you were there for that hearing, right? I did not have a court reporter. So the only thing that we have then that would reflect what was considered at that hearing would be the order that was entered, correct? Yes. What does that order, I don't have it here in front of me, what does that order reflect? The order, if I can paraphrase, in the salutary portion of the order, it reflects that the court is fully advised in the promises. In the findings in the credal portion of the order, it specifically makes findings that the services were reasonable, and that the fees charged for the services, I'm sorry, that the services rendered were necessary, and that the fees charged for the services were reasonable. That's specifically stated in paragraph one of the order. Okay. Thank you. Thank you. Thank you. Okay. Mr. Keeton, you may proceed. Thank you, Justice. A couple of points very quickly. A lot of what you just heard is outside the record as well. There were no emails or bills or anything like that submitted that made a record of this at all. We were there for the hearing. I have the order right here. It's in the record at 844. There's no mention of anything else being submitted, reviewed, nothing. So all of that is outside the record as well. What I would note is that, you know, either the fee agreement was reviewed or it wasn't reviewed. If it was reviewed, then there should at least be an explanation from the trial court as to why it ignored the $2,500 limit. I notice that under Rule 352, this body is allowed to dispel or dispatch a case without oral argument, but only upon entry of a written order stating with specificity why such power is being exercised in the affected case. Now, if a trial court knows that an appellate court is going to review this case someday, why wouldn't you have the same obligation on the trial court if you're going to allow either a 96% deduction of someone's fees or a 26-fold increase in the fees? So beyond the scale of what either side expects. So either they're going to be the appellate or I'm going to be the appellate on the ruling from this trial court. If something like that is going to come down the pipe, why wouldn't there be some statement as to why you increased it 26 times or deducted 96% with no statement at all as to reasoning? Now, they didn't. The trial court did not have any knowledge. Were you there at the hearing? No. Then how would you know whether he did or didn't do it? Well, the order. We have the order in the record. The order in the record says nothing about any other evidence being submitted. Zero. Actually, if you look at the case law, though, I think the case law is clear that the court's oral pronouncement actually takes precedence over the written order that the court enters. And we don't know what that was. Right. But I would just point that out as kind of a footnote that if he did make oral findings, which we're not aware of, if he did make oral findings, those would actually take precedence over anything that's in writing. Well, I have in Ray Ransom, it must be apparent that the fees software necessarily occurred and more are shown to justify a fee request than a mere compilation of hours and hourly rate. The trial court didn't even have that. That doesn't have to be contained within an order, but it does have to be contained within the record. Sure. But you need the record to prove the negative fact. In other words, if you had a transcript or a bystander report and there was no mention made in the transcript or the bystander report that the trial court made those findings, then you could cogently and most likely successfully argue that the trial court didn't do it. But if you don't have a record, then we don't know whether or not the trial court did or did not do those things. There was no way. And we're supposed to presume that without a record he did or she did. Well, like I said in my earlier statement, I think either way this goes, either the trial court read the fee agreement or didn't read the fee agreement, but either way, whether it's a 96 percent deduction or a 26-fold increase, without something in the record that goes up to this court to look at, I think it's incapable of appellate review. Do you understand the consequence of the inability of an appellate court to review an issue? It's either dismissal or affirmance. It's not reversal or vacation. The only time that happens is when supposedly the appellant is a defendant and it is the appellee's responsibility, usually the state, to provide the record because the defendant or the appellant is indigent. Well, that's one of the reasons I went out on a motion to vacate, was to show the court that, like, Judge, did you even look at this? Did you know this was out there? And he just flatly shut me down. Now, I did have a court reporter for that one, but he just said, no, we're going to do this off the record, let's go talk in the chamber. So the court reporter was superfluous at that point. But it just, it stuns me to think that the appellee, in this case, wants to follow the statute, admittedly didn't follow the statute, and then told the trial court that it did so that it didn't make it into the order in 844. He expressly told the trial court that he followed 508C when he admitted four days earlier that he did not. The appellee also wants to enforce the written agreement. His brief is all about let's enforce the written agreement between the parties, but only parts of it. Do you remember whether the fee judgment order was entered before or after the final judgment in your divorce or your dissolution proceedings was signed? That I do not know. I'm sorry. I can find out and get back to you. You're trying to put it out of your mind. I'm sorry? You're trying to put it out of your mind. I'm trying to put the last couple of years of this out of my mind. Okay. Are there any other questions? No. Okay. Thank you. Your time is up. The case will be taken under advisement. Thank you for the court's time. The court's adjourned.